(Decided March 27th, 1861.)

---

## EBENEZER T. PHELPS and JOHN STEWART's lessee *vs.* JAMES PHELPS.

Parties may take by way of *remainder*, though not technical parties but *strangers* to the deed, and upon the title derived by such conveyance, may, after the death of the tenant for life, maintain an action of ejectment.

For many years courts have gradually abandoned the nice distinction between rights of parties created by *indentures* and *deeds-poll*, and the Act of 1794, ch. 57, was evidently passed with this object in view.

The execution, acknowledgment and enrollment of a deed makes it obligatory on the grantors, and one enrollment is an acceptance by all the parties claiming under it, unless the contrary be shown.

Where the parties to take in remainder are children of one of the grantors, such grantor, even if the deed be an indenture, is concluded by it from denying the title created in favor of his children, and a party claiming through such grantor is equally estopped.

Where a deed, not containing the courses and distances, refers to another deed which does contain them, it makes the deed referred to a part of the first deed, and if the location on the plats corresponds with the deed containing the courses, it will suffice.

The permanent trustee of an insolvent supersedes the provisional trustee, and the property of the insolvent passes into his hands with the title thereto, by operation of law, in the absence of a deed conveying the same to him.

The Act of 1829, ch. 208, though vesting the title to the insolvent's property in the *provisional* trustee, without a deed from the insolvent therefor, yet this act does not disturb the authority of the court to appoint a *permanent* trustee.

APPEAL from the Circuit Court for Anne Arundel county.

*Ejectment,* for a tract of land called "Addition to Timber Ridge," brought on the 28th of March 1849, by the appellant against the appellee. The nar. and pleadings are fully stated in the opinion of this court.

The case was submitted to the court below on an agreed statement of facts, the material parts of which are also fully stated in the opinion of this court. It is only necessary to add, that the statement of facts shows that Ebenezer T. Phelps petitioned for the benefit of the insolvent laws in the city of Baltimore, on the 24th of February 1844, and, on such application, John Stewart, one of the lessors of the plaintiff, was duly appointed his permanent trustee, and has duly bonded and qualified as such; and that the deed styled "This indenture between Richard Phelps and James Phelps of the one part, and Walter Phelps of the other part," made part of the statement of facts, is dated the 24th of December 1817, and describes the land thereby conveyed, thus: "All those

three following tracts or parcels of a tract of land called 'Addition to Timber Ridge,' lying in Anne Arundel county, and contained within the following metes and bounds, courses and distances, to wit: which will fully appear in the deed made by Charles Carroll of Carrollton, Daniel Carroll of Dundengton, and Christopher Johnson of Baltimore, to said Richard Phelps and James Phelps and their heirs and assigns." It was then agreed that if the court shall be of opinion, upon this statement of facts, that the plaintiff had lawful right or title of entry into said land and premises, then judgment is to be entered for the plaintiff in the usual form; otherwise, judgment to be entered for the defendant, with the right of appeal to each party.

The court (BREWER, J.) gave judgment for the defendant and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

F. H. Stockett and Thos. S. Alexander, for the appellants:

1st. It is believed that the judge below, as the reason for his judgment, considered that the three children of James Phelps, not being technical parties to the deed, which can only be treated as an indenture, can take no estate by such conveyance, but had it been a deed-poll, it would have been operative to convey the legal estate in remainder to the children, or had it been to Walter in trust for the children, it would have been operative in equity, but being an indenture as opposed to a deed-poll, it can only convey a legal estate to such as are technically parties to the same. The deed was duly executed, acknowledged and recorded, and it must be treated as having been delivered to and accepted by the children, though no parties to it. 11 Md. Rep., 41, Hutchins vs. Dixon. 6 H. & J., 234, Craufurd vs. The State. 6 Md. Rep., 525, Warner vs. Hardy. 3 Md. Rep., 67, Stewart vs. Redditt.

With respect it is submitted, that the court has fallen into the prevalent error of supposing that an indenture must be

*inter partes*, and that a deed-poll must, of necessity, be in the first person. Though this view seems at first plausible, we think it can be successfully shown that it is wrong in both particulars. *Litt.* in *sec.* 370, tells us, that an indenture may be in the *third* person or in the *first* person; and in *secs.* 371, 372, he gives us examples or precedents in form. It is not of the *essence* of an indenture, therefore, that it should be *inter partes, Shep. Touch.*, 51. Again, *Lord Coke*, in commenting on *sec.* 370, tells us that an indenture is so called because it is actually *indented* in the top or side answerable to another, and that a deed-poll is that which is *plain* without any *indenting*, and it is so called because it is cut even or polled. In other words, every deed which is not *indented* in fact is a *deed poll*, and therefore, a deed-poll may be indifferently *inter partes* or in the *first* person. And again he tells us, if a deed begin "*Hæc Indentura*," and in truth the parchment is not indented, this is no indenture, because words cannot make it indented. It is clear, therefore, that according to *Lord Coke's* definition the deed in the present case is a deed-poll—and it is not made the less so by the Act of 1794, ch. 57. This Act only declares that indenting shall not be necessary to the validity of every deed. The Acts of 1715, ch. 47, and 1766, ch. 14, had expressly required every deed intended to pass real estate to be indented. The Act of 1794 declares indenting to be unnecessary, or in other words, that indentures and deeds-poll shall be equally operative as conveyances of land. But that Act does not profess to make that an indenture, which, in truth, is not an indenture. The supposition that it did, is, perhaps, the origin of the prevalent error before referred to. Had the provisions in that Act been, that indenting should no longer be necessary to an indenture, then every deed commencing with the words "*Hæc Indentura*" would be a legal deed indented. But there is no such provision in that Act. What was necessary to make an indenture prior to 1794, remains necessary now. What was a deed-poll prior to 1794 is a deed-poll at this day. The letter and intent of the Act were, that parties may now indifferently use an indenture or deed-poll, to effect

Phelps & Stewart's Lessee *vs.* Phelps.

a purpose which, before the Act, could only have been accomplished by indenture.

And it will now be found that, for very many years, courts have gradually abandoned the nice distinctions formerly relied on between rights of parties created by indentures and deeds-poll. A deed-poll is now regarded, in England, as a deed made between the party or parties who executed it on one side, and all the world on the other; or rather as a declaration addressed to all mankind of what the parties executing it have done, so that *any* person may take a right of action on any covenant in it, and this without respect to the mode of commencing the deed, or whether in the *first* or the *third* person. The only question for determination, to make it obligatory on the grantors, is the fact of acceptance by the parties claiming title under it—one enrollment is an acceptance, unless the contrary be shown as the authorities already cited establish. So formerly it was held that a stranger to an indenture could not take a release under it, or an estate, unless by *remainder* or through the statute of uses. Now, however, the courts hold that a stranger may take *immediately* under an indenture, and the deed may have the effect of an indenture without being actually indented. 1 *Spence's Eq.*, 160. In this country the distinction is, that a deed-poll is held to be the deed of the parties making it, and concludes them only, but an indenture is the deed of all the parties and concludes all. 2 *Hill's (S. C.) Rep.*, 439. 2 *Hilliard on Real Prop.*, 265, *et seq.*

In the present case it will be remembered, the grantors are Richard and *James* Phelps, and the parties to take in *remainder* are the children of *James* named in the deed. It will also be recollected, that the contestant is, also, the child of the *same* James Phelps not named in the deed, and the issue by a *different* marriage. If, therefore, this be an indenture, James, as one of the grantors, is concluded by it, under the strictest construction, from denying the title so by him created in favor of the lessor of the plaintiff; and are not all of his other children equally estopped by it, who can only claim through their father?

The court could have no doubt, if this conveyance had been *a trust* for the children as in *Ware vs. Richardson, 3 Md. Rep.,* 505. In that case the limitations were to R. and his heirs and assigns, in trust, for the separate use of Mrs. R. for life, "and from and immediately after her death, then to and for the use and benefit of her children." Judge Mason on page 546, considers it unnecessary to determine whether the deed was a feoffment or a bargain and sale. But as it was held that the legal estate in fee was vested by that conveyance in the children of Mrs. R., and as we know that, under a bargain and sale, the legal estate vests in the bargainee *alone,* it must have been assumed by the court that the deed was to operate as a feoffment, and we must also assume that the court considered the estate of the trustee, by virtue of the deed, was coeval with the trust it intended to serve, and the *remainder* to the children vested at common law. On this hypothesis that case precisely covers the present one:—for it will show that if A. enfeoffs B. for life, remainder to C. in fee, and livery of seizen is made to B., this will sustain the estate in remainder, and the inference is clear that enrollment serves the purpose of livery of seisin.

If a deed be made between A. and B., and it conveys land to B. for life, and then to C., this deed shall have the effect of vesting the estate in C. after the expiration of the particular estate. It will also be borne in mind, that the Acts of 1715 and 1766, which *alone* render a deed necessary, do not require that it shall be made *inter partes,* and that no writing whatever was necessary at common law. Hence it may be concluded that, as the statute of frauds and the Acts of 1715 and 1766 are silent as to form, and as indenting is rendered unnecessary by the Act of 1794, at this day lands may be conveyed indifferently by indenture or deed-poll, and by deed *inter partes* or in the *first* person, and that any such deed may operate as a feoffment or bargain and sale, as may best advance the intent of the grantor. All these inferences seem to be conclusively sustained by *Litt., sec.* 374, and *Lord Coke's Commentaries* thereon. *Litt.* puts the case of an estate made by indenture to A. for life, remainder to B. in fee;

the indenture is sealed by A., after his death B. enters; he is bound by the conditions of the deed, and *Lord Coke* says this is so, albeit he in remainder be no party to the indenture, the *parties* thereunto being *only* the *lessor* and the *tenant* for life. And further on he takes this diversity, that a stranger to the indenture may take by way of *remainder*, but he cannot take any present estate in possession. Other cases are then put to the same effect, and in *sec.* 375 it is shown that by *deed-poll*, one, *not a party*, may be bound and may take interests.

In the case of *Ware vs. Richardson*, if the court did not assume that that deed operated as a feoffment, then, as a bargain and a sale, the court construed it at the same time as a conveyance of the legal estate to the children in remainder, and the conclusion must be that the children, though *no parties* to the deed, were bargainees in respect of the interests or estates limited to them. In either point of view it covers the present case, rendering it clear of difficuly.

Walter and Joshua, two of the children named in the deed, died intestate, unmarried and childless, leaving Ebenezer entitled to the whole as *surviving joint-tenant*. He would be equally entitled to the whole as the sole heir at law to whom the land could descend, being the *only* brother of the *whole* blood of said Walter and Joshua; there being no sister of the whole blood or descendant of a brother or sister of the whole blood, and the land having been acquired in a way other than by descent. *Act of* 1820, *ch.* 191 *sec.* 1.

2nd. As to the title of Stewart, the trustee in insolvency. The various objections urged to his title are, it is respectfully submitted, not valid. The trustee is not estopped from asserting title to the land now in dispute, by the fact that the insolvent returned a schedule in which he states that he had no property, for all the authorities are clear to the point, that all the insolvent's property passes to his trustee, whether embraced in the schedule or not. Nor was there any necessity for a deed from the provisional to the permanent trustee. The Acts of 1808, ch. 71, sec. 3, and 1812, ch. 77, sec. 6, expressly declare, that the appointment of a trustee shall

operate as an assignment of all the insolvent's property, so as to vest the title to the same in such trustee, without the necessity of the insolvent executing a deed therefor, and the Act of 1816, ch. 221, secs. 2, 3, 6, seems to apply the same rule to cases arising in the city of Baltimore, and to vest the property in the *permanent* trustee in the same manner. In the case of *Kennedy vs. Boggs*, 5 *H. & J.*, 403, decided by the Court of Appeals in 1822, it was held that the *provisional* trustee had no power to sue in his own name. This difficulty was obviated by the Act of 1829, ch. 208, sec. 3, but this Act does not interfere in any manner with the power of the court to appoint a permanent trustee, or alter in any manner the existing laws as to the rights and powers of such trustee when appointed. It, in fact, was intended, and its only object was, to make the title of the provisional trustee *endure until* the appointment of a permanent trustee, in whom the title, according to existing laws, would vest, on his appointment and qualification, in the same manner as in cases of trustees in the counties. The Act of 1819, ch. 84, sec. 7, was entirely unnecessary, and so far as we know, has never been practiced under; the commissioners have never required such assignments from the provisional to the permanent trustee to be made, and no case can be found deciding such assignments to be necessary. On the contrary, the question was raised in *Kolb vs. Whitely*, 3 *G. & J.*, 189, and decided by Harford county court that no such assignment was necessary, and the exception to this ruling was *abandoned* in argument in the Court of Appeals. The uniform practice has been for the permanent trustee to sue at law and in equity, for all property of the insolvent, whether embraced in his schedule or not, and to set aside fraudulent conveyances by him, and in no case has it been thought necessary that such trustee, in order to entitle him to sue, should produce an assignment or deed from the provisional trustee: See 1 *Md. Ch. Dec.*, 73, *Glenn vs. Baker; Ibid*, 172, *Malcolm vs. Hall;* 3 *G. & J.*, 96, *Glasgow vs. Sands;* also 3 *Md. Rep.*, 463, *Manahan vs. Sammon;* 4 *G. & J.*, 385, *Glenn vs. Karthaus.*

Phelps & Stewart's Lessee *vs.* Phelps.

3rd. Nor is it any objection that the deed in question was not located on the plats. We were not bound to locate this deed. The statement of facts admits, "that the *land in controversy between the parties* to this cause is *correctly located* on the plats." This deed does not contain the metes and bounds, but refers to the deed from Carroll and others which does contain them. All that it was necessary for us to do was to locate this *latter* deed—the deed conveying the same land need not be located. 3 *H. & J.*, 228, *Roseberry vs. Seney.*

*A. Randall*, for the appellee:

1st. The indenture under which the lessors of the plaintiff claim, between Richard Phelps and James Phelps of the *one part*, and Walter Phelps of the *other part*, can confer no such title to said lessors, or any claiming under them, as will authorize them to institute and recover in this action. The deed is one *inter partes*, and none can recover in ejectment claiming under it, who are not *parties* thereto, or claiming *legal* title under them. The indenture grants the land to the grantee for his and his wife's life, then to the three sons of James Phelps, Walter, *Ebenezer* and Joshua, to them, their heirs and assigns forever. They are not parties to this deed, and cannot recover any *legal title* under it. In 2 *Lev. Rep.*, 74, cited in 2 *Jacobs' Law Dic.*, *Title Deed*, *page* 226, it is laid down: "Where a deed is by indenture between parties, none can have an action upon that deed but he who is a party to it; where it is a deed-poll, one may covenant with another who is not a party to it, to do certain acts," &c. The authorities referred to by the counsel on the other side, show that a deed need not be indented in Maryland or in England, the effect of enrolling deeds, of union of estates, &c., but none of them show that any *legal estate* passes by a deed *inter partes* to a stranger, as in this case. This conveyance is to the grandfather and grandmother of Ebenezer, and, after their deaths, to Ebenezer and his brothers—none of them parties to the deed—and none of them enter into possession: but James, the father, enters and holds for twenty years, and dying intestate, in possession, the right descends to his chil-

dren, his heirs at law. Other authorities show that remainders may be taken by those who are not parties, but it is submitted that those cases apply where the remainders are to the children or heirs of those who take the life estate, and not, as in this case, where the remainder is to some, only, of the children of one of the grantors, who takes no estate. Other cases, where there is some act of those in remainder accepting the estate and entering into possession, but in this case Ebenezer's right began in 1834, and yet *he* never sets up any title to the land until after James had remained in possession and died in possession in 1847, and his children entered and held possession about a year, when, in October 1848, this ejectment is brought.

Again, the appellee contends the lessors of the plaintiff cannot recover in this action, because they never had possession of this land. Walter and his wife, the tenants for life, died, as appears by the statement of facts, about 1827; James then entered into possession and so continued all his life, till 1847, when he died, and descent was cast upon all his heirs at law. Walter and Joshua, the sons, died, the former in 1831, the latter in 1841, and Ebenezer arrived at age in 1834, so that James Phelps remained in possession claiming title for twenty years, and for thirteen years after Ebenezer arrived at age, before the *descent cast* upon his (James') children. 4 *Md. Rep.*, 138, *Hammond vs. Inloes.* This, it is submitted, *tolled* the entry of Ebenezer, and that neither he nor those who claim under him, had such *a legal right of possession* as enabled them to bring this ejectment. The claimant must have a right to the possession; that is to say, he must have a right of entry upon the lands at the time of the demise in the declaration, and whatever takes away this right of possession or entry, and turns the same into a right of action, will also deprive the claimant of his remedy by ejectment, although the legal title still remains in him. *Adams on Eject.*, 34. 3 *Maule & Selw.*, 322, *Storer vs. Gordon.* 2 *Inst.*, 673. *Co. Litt.*, 23. 16 *Johns.*, 302, *Jackson vs. Cary.* This right of entry may be destroyed by discontinuance, by descent, by limitations. *Adams on Eject.*, 35. By *descents* which take

17    ·    v.17.

away entries, are, when one seized, by any means whatever, of the inheritance and dies, whereby the same descends to his heir.   In this case, however feeble the right of the ancestor, the entry by any other person is taken away, and he cannot recover possession against the heir, but is driven to his action to gain a legal seizin of the estate.  *Adams on Eject.,* 41, 42.   A descent cast need not be pleaded, but must cause the plaintiff to fail in proving his possessory title, and consequently entitle the defendant to a verdict on the general issue. *Adams on Eject.,* 270.   3 *Bl. Comm.,* 176.   *Mr. Gill,* in his *work on Ejectment, (Dorsey's Lectures,)* says, at *page* 34, that this doctrine does not apply here in Maryland, but, on examination, the cases referred to support no such proposition.

2nd. The title to any estate of Ebenezer, the insolvent, vested by the Acts of 1812, ch. 77, sec. 5; 1816, ch. 221, sec. 2; and 1829, ch. 208, in the provisional trustee, Gray, and the insolvent was divested of all title thereto, and could not institute this suit, and as there is no proof that Gray, the provisional trustee, ever transferred the title to the insolvent's estate to Stewart, Stewart could not institute this suit.   Moreover, the schedule filed as evidence in the cause by the plaintiff, shows that the insolvent had no property, and therefore had no title to the land for which this suit is brought.   But, however this may operate, the Act of 1819, ch. 84, sec. 7, requires that "in every case now depending or hereafter to come before the commissioners, in which a permanent trustee shall be appointed, different from the provisional trustee, they shall cause a deed of transfer and assignment of and for all the estate, property, rights, credits and effects of the insolvent or insolvents to be forthwith executed by the provisional trustee or trustees, to the permanent trustee or trustees, and lodged with them among the papers belonging to the cause in which it shall have been executed," and sec. 8 also requires this transfer and delivery, and punishes the provisional trustee who fails to make them.   This Act was compiled in 1 *Dorsey's Laws,* 708, 709, as then (1840) continuing to be the law.   The case of *Kennedy vs. Boggs,* 5 *H. & J.,* 403, was

decided in 1818, *in the court below*, and no doubt this law was passed to compel the provisional trustee to convey to the permanent trustee the estate of the insolvent in such cases, no provision having been made for the vesting of the title in the permanent trustee by operation of law, as in the cases of provisional trustee, and trustees for the counties in insolvent cases. But it is said, on the *other* side, that this Act was passed in ignorance of the existing condition of the law, and was not required. The court cannot presume such ignorance in the Legislature, and, on examination, they will find there is no law which vests by its operation the title of property, which the provisional trustee holds, in the permanent trustee; certainly we have examined with some care, and can find no such law, so that such provision was required for that purpose. None of the cases referred to on the other side bear on this question at all, except that of *Glenn vs. Karthaus, 4 G. & J.*, 385, where counsel, in arguing, refer to this Act of 1819, ch. 84, and *Mr. Johnson*, in his argument, *(page* 389,) gets rid of it by showing that the case occurred prior to 1819. This law is also referred to in the case of *Williams vs. Ellicott, 6 H. & J.*, 427, which also arose prior to the passage of the Act. The truth is, it so rarely happens that insolvents have any real estate, and especially land located in another county, that the provisions of this Act have never, as far as we have found out, been required to be applied, or its construction called for by any court. Yet, if no case can be found dispensing with its provisions, we submit, no assignment or transfer of this land in Anne Arundel ever having been executed by the provisional trustee to the permanent trustee, and no law operating so to transfer it, that the title, if any, in the provisional trustee, yet remains there, and as he is not the lessor in either of these demises, the plaintiff cannot recover. The practice, or rather the suggestion of an opinion by counsel on the other side, that it had been the practice of the insolvent commissioners in Baltimore not to require such an assignment, surely would not be sufficient to dispense with this requisition of the law. There have been too many changes made by the decisions of this court, correcting the

practice of the circuit courts and court of chancery, in rela-
tion to the course of proceeding in cases of insolvency, after
a series of decisions establishing it *in those courts*, to cause
this court to hesitate in the discharge of so plain a duty, if so
considered by it.  There is nothing, therefore, in any of these
insolvent laws which dispense with the general laws and
policy of the State, time out of mind, to require a duly exe-
cuted, acknowledged and recorded deed to transfer real estate;
in this case more especially demanded, where the court hav-
ing jurisdiction of this insolvent's case has no jurisdiction in
the county where the land lies.  But, again, the Act of 1854,
ch. 193, *repeals* all the laws in relation to the insolvent's
trustees, &c., and enacts a general law on the subject, and
as there is no reservation of such rights as this trustee is now
claiming to exercise, it is respectfully submitted, that if he
ever had any such, they are now null and void.  *Dwarris on
Statutes*, 675.   6 *Cranch.*, 203, *United States vs. Hillen.*
6 *Cranch.*, 329, *The Rachel vs. United States.*

3rd. The deed filed in this cause as the evidence of the
plaintiff's title has not been located on the plats, nor is there
any evidence to prove that the land the plaintiff claims is the
land described in that deed.

For these reasons we contend, that there has been shown
no such *legal title* and *possessory title* in the premises, as is
required in every case to enable a plaintiff to recover in eject-
ment.

GOLDSBOROUGH, J., delivered the opinion of this court.

This was an action of ejectment, instituted in the circuit
court for Anne Arundel county, by the appellant against the
appellee, to recover a tract of land called "Addition to Timber
Ridge," lying in said county.   There are two demises in the
plaintiff's nar., one by Ebenezer T. Phelps, on the 1st day
of January 1853, to the plaintiff, for twenty years, the other
by John Stewart, on the 1st day of October 1848, for a like
period.   The appellee appeared, entered into the consent
rule, admitted lease, entry and ouster, pleaded not guilty,
and the appellant joined issue thereon.   At the April term,

1858, of the circuit court, the case was submitted on the admitted statement of facts set forth in the record, and at the following term the court gave judgment for the appellee, from which the appellant appealed to this court.

By reference to the deed, made a part of the statement of facts, it will be seen that the property claimed by the appellant was conveyed by Richard Phelps and *James Phelps*, the father of Ebenezer Phelps, to Walter Phelps and his wife, Margaret, during their lives, and the life of the survivor, and on the death of the survivor, then to Walter Phelps, Joshua Phelps, Ebenezer T. Phelps, the three sons of James Phelps, one of the grantors, and their heirs and assigns forever. After the death of Margaret, who survived her husband, James, *one of the grantors*, and the father of Walter, Joshua and Ebenezer Phelps, to whom the deed had given the remainder in fee, took possession of the land in dispute, his three sons being all minors and living with him. James continued in possession until his death, in 1847. Two of the sons, Walter and Joshua, had in the meantime died, intestate, unmarried and without children, leaving Ebenezer, their only surviving brother of the whole blood.

If, therefore, the deed was operative to convey the fee-simple to the three brothers, then Ebenezer was entitled to the whole, as surviving joint tenant. He would be equally entitled to the whole as sole heir at law, the three brothers having acquired the title to the property by purchase, and not by descent. See Act of 1820, ch. 191, sec. 1.

The appellee, however, insists "that the three sons of James Phelps, before mentioned, not being *technical parties* to the deed, which can be treated only as an 'indenture,' can take no estate by such conveyance."

The attempt to apply to this case the distinction between "deed-poll" and "indenture," we think must fail.

The execution, acknowledgment and enrollment of the deed, made it obligatory on the grantors, and one enrollment is an acceptance by all the parties claiming under it, unless the contrary is shown. *Hutchins, et al., vs. Dixon, Excr. of Hooper,* 11 *Md. Rep.,* 41, and the cases there cited. It was

properly said, in argument, that "for many years courts have gradually abandoned the nice distinctions between rights of parties created by indenture and deed-poll, and the Act of 1794, ch. 57, was evidently passed with this object in view." But beside this, there are direct decisions which support the doctrine that parties may take by way of *remainder*, though strangers to the deed. See 2 *Hills' (S. C.) Rep.*, 439. 2 *Hillard's Real Pro.*, 265, *et seq.*

In this case the grantors are Richard and *James Phelps*, and the parties to take in *remainder* are the children of James. The appellee is also the child of James, by a different marriage. If this deed be an indenture, James, as one of the grantors, is concluded by it from denying the title created in favor of his children; and the appellee claiming through him is equally estopped.

One of the points made by the appellee's counsel is, that the deed filed in this cause, as evidence of the appellant's title, has not been located on the plats, nor is there any evidence to prove that the land the appellant claims is the land described in the deed.

In our opinion this point is not well made. We find by the statement of facts, that it is agreed "that the land in controversy between the parties to this cause, is properly located on the plats in the cause." And though the deed mentioned in the statement of facts is not located, because there are no courses mentioned in it, yet if it refers to another deed which does contain them, it makes the deed referred to a part of the first deed, and if the location is correspondent with the deed containing the courses, it gratifies the law, upon the principle that if there be a reference in the description to something *aliunde*, a recourse to which will establish the certainty of the premises, such demonstrable certainty will suffice.

As to the second question, the title of John Stewart, the permanent trustee of Ebenezer Phelps:—we think his title cannot be questioned. The Act of 1829, ch. 208, on which the appellee's counsel mainly relies, though vesting the title to the insolvent's property in the *provisional* trustee, without the necessity of such insolvent's executing a deed therefor, and

entitling such trustee or trustees to use all lawful means for the recovery thereof, yet that law does not disturb the authority of the court to appoint a *permanent* trustee; and in this case that authority was, in fact, exercised. To facilitate the objects of the insolvent laws, those laws have wisely given to the trustee, appointed by the court, the entire management of the insolvent's estate, subject, of course, to the control of the court by whom he is appointed.

The whole current of authorities, which we cannot disregard, settles the doctrine that the permanent trustee supersedes the provisional trustee, and that the property of the insolvent passes into his hands, with the title thereto, by operation of law, in the absence of a deed conveying the same. See *Waters vs. Dashield*, 1 *Md. Rep.*, 472, and the Acts of Assembly and cases there cited by the court.

*Judgment reversed, and judgment for the appellant*
   *for the premises described in the declaration, and costs.*

(Decided March 27th, 1861.)