FORD *v.* UNION TRUST COMPANY OF MARYLAND, TRUSTEE

[No. 212, October Term, 1949.]

*Decided July 19, 1950.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Hiram C. Griffin* for the appellant.

*Stuart E. Brown, Jr.*, with whom were *Niles, Barton, Yost & Dankmeyer* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

Appellant appeals from a decree of the Circuit Court No. 2 of Baltimore City, overruling exceptions to a report of sale, and directing him to take title to the property sold free and clear of any restrictions.

The property in question lies almost entirely in Baltimore County, but was sold by a trustee under the will of a resident of the City, which is the reason for the case being in a city court. It is at the corner formed by the intersection of the north side of Liberty Heights Avenue with the southeast side of June Drive, and comprises Lots D and E in Section K on a plat of Haywood Heights, and an irregular shaped undesignated lot in the rear of these two lots and also in the rear of Lots F, G and H in Section K. The improvement on Lots D and E, each 50 feet in width, is known as No. 5914 Liberty Heights Avenue. The agreement of sale reported provided that if any restrictions prevented the use of it for a general automobile business, appellant had the right to declare the agreement null and void.

On March 22, 1922, William T. Pfeiffer, under whose will the appellee is acting as trustee, recorded a plat of a large tract of property, including the lots in ques-

tion, under the name of "Haywood Heights". On this plat, Section K, in which are the lots with which we are concerned, was not subdivided. Subsequently, on June 25, 1924, Pfeiffer conveyed to certain purchasers Lots H and I, in Section K, recording with his deed a plat which showed Section K divided into lots along Liberty Heights Avenue. The lots nearest the City line were designated on that plat by the letters A, B, C, D, E, F, G, H, and I. Lots H and I, at that time sold, were bisected by the City line. On the original plat there is a line which seems to be the eastern-most boundary of Section K, known as the 331 foot 11 inch line. This line bisected Lots B and C on the plat filed with the H and I deed. The H and I deed contains no restrictions whatever. On September 6, 1924, Pfeiffer conveyed F and G, which were the next two lots to Lot H, to the same parties who had previously bought H and I, and this deed contained no restrictions. On October 3, 1925, Pfeiffer conveyed Lots A and B to his son. At this time he filed an additional plat which showed that June Drive had been created out of Lot C. The deed conveying Lots A and B contained restrictions, one of which was that the premises could be used for residential purposes only. The deed also contained a provision that the restrictions should bind all the property of both the grantors and the grantees, and all the land within the outlines of the plat, and should run with and bind the land included within those outlines, and should be included in or construed to be concluded in all future deeds or conveyances of any part of the property. This is the simplest method of creating enforcible restrictions running with the land. *Levy v. Dundalk Co.*, 177 Md. 636, 647, 11 A. 2d 476; *Scholtes v. McColgan*, 184 Md. 480, 489, 41 A. 2d 479.

The deed of the Lots A and B was the first one containing any restrictions. On October 26, 1926, Pfeiffer conveyed to William E. Morrison and wife, Lot 1 of Section I. This deed contained the same restrictions as those in the deed to his son of Lots A and B of Section

K. On October 1, 1929, Pfeiffer conveyed to another purchaser a part of Lot I in Section K, and on October 11, 1936, conveyed to the same purchaser the remainder of this lot. This was the lot which he had previously conveyed, and had had reconveyed to him in 1924. There were no restrictions in the last mentioned deeds. Subsequently, Pfeiffer conveyed to other purchasers Lot 5 in Section K and Lots 10 and 11 in Section N. Lot 5 was the lot next adjoining Lot A to the west. These deeds provided that the restrictions set out in the Morrison deed applied to the properties conveyed. In 1926, Pfeiffer erected on Lots D and E, which are the front lots now being sold, a garage, and the rear lot, which is the remainder of the property sold, was used as an adjunct for the use of the garage. This garage has been used as such up to the present time, and the appellant is now a tenant for part of the property. In 1936-7 Pfeiffer erected a dairy on Lots 5 and 6 of Section L. These two lots are directly across Liberty Heights Avenue from Lots 5, A and B of Section K. This property has ever since been used as a dairy. There is also a garage on Lot G of Section K and there is a lot southeast of and adjoining Lot I, which was formerly used as a garage and is now used for the manufacturing of concrete and stone garden ornaments. The property in question is zoned E commercial in Baltimore County, and the adjacent property is predominantly used for business purposes.

The appellee contends that the restrictions do not apply to the property herein sought to be sold, because it claims that the original plat does not include that portion of Section K east of the 331 foot 11 inch line, and because, if it did include that portion, the property east of that line became immediately commercial after Pfeiffer made his first deed without restrictions, partly by Pfeiffer's action in building a garage on it, and partly by similar acts of other owners, and that the character of this section, including the other lots, is so predominantly commercial that it must be held that any restrictions

on it have been long since abandoned. We agree with the second contention, and, therefore, we do not think it necessary for us to determine whether the restrictions originally applied to that part of Section K east of the 331 foot 11 inch line or not.

It has been held in any number of recent cases that where, by the lapse of years, restrictions intended to keep property residential, have been ignored and disregarded and the property has become commercial, and conditions have entirely changed, the courts will not enforce the earlier restrictions. See *Whitmarsh v. Richmond*, 179 Md. 523, 20 A. 2d 161; *Gulf Oil Company v. Levy*, 181 Md. 488, 30 A. 2d 740; *Talles v. Rifman*, 189 Md. 10, 53 A. 2d 396; *Norris v. Williams*, 189 Md. 73, 54 A. 2d 331. The facts in the case before us show that while there may be a residence or two in the section, these residences are sandwiched in between business structures and have been so for years. It is impossible to conceive that any of the owners of property in this section could now enforce these restrictions against the business properties, including the property in question here, and since that is the case, we think the Chancellor was correct in overruling the exceptions and ratifying the sale made to the appellant.

It appears from the record that by consent of the parties the Chancellor visited the property. He filed an opinion in which he said that the property was never intended to be residential, and could not, in fact, be used for residential purposes, that the land is situated in a hollow, not far from the stream at the city line, and has been built up by a series of commercial establishments, that the garage on the property in question is a very large building in excellent condition, and in the back of it is the land used for trucks and other vehicles, and that across the street is a drive-in dairy which is a very large establishment, and a series of garages and other commercial buildings. The Chancellor confined his statement to the immediate neighborhood and was careful in his opinion to say that, while further up the road there

were medium priced houses located in a residential area, this was separate and distinct from the commercial area. This opinion of the court, delivered after a visual inspection of the property, made by agreement, confirms our view, which we find from the record. The decree will be affirmed.

*Decree affirmed with costs.*