CARROLL COUNTY DEVELOPMENT CORP. *v.* BUCKWORTH ET AL.

[No. 228, September Term, 1963.]

548

*Decided May 5, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Robert J. Cooke,* with whom was *Lawrence A. Thomas* on the brief, for appellant.

*E. O. Weant, Jr.,* with whom were *Brown & Weant* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Carroll County dismissing the appellant's bill of complaint which sought an injunction against the appellees to prevent the alleged violation of one or more restrictive covenants applicable to land upon which the individual appellees, the Buckworths,

as owners, were constructing a house. The corporate appellee is a bank holding a mortgage on the Buckworth property. It took no active part in the case.

The Buckworths' land is located in a development known as "Sullivan Heights," at Westminster, Carroll County. Other land in this development is owned by the appellant, Carroll County Development Corporation (sometimes referred to below as "the Company"). It appears that on July 8, 1960, Russell L. Bloom and Mary D. Bloom, his wife, being then the owners of Sullivan Heights, by a deed dated July 8, 1960, duly recorded ten days later, conveyed a lot in Sullivan Heights to Edward A. Kennedy and wife, subject to sixteen covenants and conditions (sometimes referred to below as "restrictions"). It is not contested that these restrictions were made applicable to other lots in Sullivan Heights, including what is now the Buckworths', or that the Buckworths had constructive, if not actual, notice thereof and are bound by such notice. It also appears that three plats (two of them apparently revisions) of Sullivan Heights were duly recorded. These did not refer to the restrictions, but did show required setbacks. As to the Buckworths' lot, this setback was first to be thirty-five feet, but this was later reduced to twenty-five feet.

On September 10, 1960, the Blooms conveyed, by a deed duly recorded, to Andrew J. Shaw and wife three parcels of land in Sullivan Heights, subject to the restrictions in the Kennedy deed. The Blooms reserved approximately 4.3 acres in the development, and the conveyance appears to have covered all other land then owned by them in Sullivan Heights. By a deed dated October 20, 1961, and duly recorded, the Shaws conveyed several lots, including what is now the Buckworths', to The Schaeffer Lumber Company, subject to such lawful restrictions as might be applicable thereto. By deed dated February 13, 1963, The Schaeffer Lumber Company, which made no reference to restrictions, conveyed one of these lots (No. 8 in Block B) to the Buckworths, and soon thereafter the Buckworths started to build a house on their lot.

The Shaws, by a deed dated December 29, 1961, also duly recorded, conveyed lots then owned by them in Sullivan Heights to the appellant, the Company, of which Mr. Shaw is

the president, and he is evidently the dominant person in its affairs.

When Mr. Shaw saw that construction had begun on the Buckworths' lot, he immediately raised an objection based upon an alleged violation of the setback requirement. This objection proved untenable and he then shifted his ground of objection to a claim of noncompliance with a restriction requiring approval of plans and specifications for houses to be constructed. This is one of the five restrictions deemed pertinent to the case at the trial. It is designated as No. 5 and requires, in brief, that before any building, or any addition or alteration thereto, shall be commenced, plans and specifications therefor, showing *(inter alia)* heights and location of the building with respect to topography and ground elevation, shall first be submitted to and approved in writing by the Blooms, "their heirs and assigns."

The other four restrictions above referred to are Nos. 13, 14, 15 and 16, which are stated or summarized below:

No. 13 (which is inaccurately printed in the appellant's appendix) reads as follows:

"13. Enforcement.

The provisions herein contained shall run with and bind the land and shall inure to the benefit of and be enforceable by Russell L. Bloom and Mary D. Bloom, his wife, their heirs and assigns or the Owner of the lease-hold or fee simple (but not reversionary or mortgagee interest) of any lot, their respective heirs, personal representatives, successors and assigns, and failure by Russell L. Bloom and Mary D. Bloom, his wife, their heirs and assigns or any lot owner to enforce any restriction, condition, covenant or assignment herein contained shall not in any event be deemed a waiver of the right to do so thereafter as to the same breach or as to one occurring prior or subsequent thereto."

No 14, entitled "Right to Abate Violation," in substance confers upon the Blooms, "their heirs and assigns," in case of any violation of any of the restrictions or covenants, "in addi-

tion to all other remedies (1) the right to enter upon the land" and "summarily to abate or remove, at the expense of the owner thereof any erection, thing or condition" existing in violation of the restrictions, without thereby incurring liability, and (2) to apply for injunctive relief, "since the parties * * * agree that any breach * * * cannot be compensated adequately by recovery of damages."

No. 15 is badly garbled through an obvious omission in the first sentence. This condition or restriction undertakes to deal with the assignability of "the rights and powers, titles easement and estate reserved to the Blooms, their heirs and assigns." The second sentence does make it clear that any would-be assignee or transferee of these rights and powers can acquire them only by joining in an appropriate instrument in writing evidencing consent to the acceptance of such rights and powers, and that any such instrument must be duly recorded among the land records of the County. It is conceded that neither the Shaws nor the Company ever complied with either of these conditions. Hence, the appellant Company can derive no powers by virtue of this covenant.

No. 16, headed "Right to Modify," reserves to the Blooms the right to annul, waive, change or modify any restrictions or covenants so long as such changes do not substantially affect the rights of any lot owner. If they would affect any lot owners substantially, the consent of all so affected must be evidenced by a written agreement to be recorded among the land records of the County.

As this case comes to us it seems to involve, so far as the merits of the original controversy are concerned, something of a tempest in a teapot—whether the Buckworths' house will be three feet higher than the appellant thinks it should be. We infer that the case would not be here if that were the only problem now involved. The appellant's greatest concern seems to be that one of the grounds upon which the trial court rested its opinion was that restriction No. 5 was unenforceable because it was in restraint of the alienability of real property. The trial court also expressed the view that the rights reserved under No. 14 were unconscionable and that their enforcement would not be permitted by that court. To change the metaphor,

the appellant now finds that it has a bear by the tail, since the adverse views of the trial court in this case would confront it as a most serious barrier in any future litigation in which it might attempt to enforce either of those clauses.

We are unable to agree with the Chancellor's view that restriction No. 5 is void. Restrictions in similar terms requiring submission and approval of plans have been upheld in *Peabody Heights Co. v. Willson*, 82 Md. 186, 32 A. 386; *Jones v. Northwest Real Estate Co.*, 149 Md. 271, 131 A. 446; and in *Kirkley v. Seipelt*, 212 Md. 127, 128 A. 2d 430. The latter cases show that approval or disapproval must be reasonable and that the power must be exercised in good faith. See also *Sowers v. Church of the Holy Nativity*, 149 Md. 434, 131 A. 785.

As already indicated, we agree with the Chancellor's view expressed in another part of his opinion that the Company acquired no right to enforce any of the restrictions by virtue of restriction No. 15. We are not called upon to determine whether, as the Chancellor thought, the Blooms have lost all right to enforce the restrictions by reason of the sale to the Shaws; but in view of their retention of some 4.3 acres of land in the development, we are not to be understood as implying that they have done so. See *Jones v. Northwest Real Estate Co., supra*, 149 Md. at 280-81. Contrast *Foreman v. Sadler's Executors*, 114 Md. 574, 579, 80 A. 298.

The restrictions in the deed from the Blooms to the Kennedys are expressed as running with and binding upon the land conveyed and were obviously intended to be imposed also upon other lots than that conveyed to the Kennedys, but the Blooms did not impose the restrictions on property retained by them and did not agree to impose them upon all land in the development. That would, of course, have been the "simplest method of creating enforceable restrictions and making them run with the land." *Ford v. Union Trust Co. of Md.*, 196 Md. 112, 75 A. 2d 113, quoted in *Gnau v. Kinlein*, 217 Md. 43, at 50, 141 A. 2d 492. The record perhaps suggests, but does not clearly show, that they imposed such restrictions on all of the lots conveyed by them prior to their conveyance to the Shaws, and it is not clear what conveyances, if any, were made by the Blooms to others in that part of Sullivan Heights in which the

Buckworth lot is located. Shaw's testimony shows that the Blooms had imposed somewhat different restrictions on another part of Sullivan Heights. It is difficult on the record before us to determine definitely whether there was or was not a general plan of development for that part of the subdivision in which the Buckworths' lot is situated, but we shall assume, without deciding, that there was one.

Even making this assumption, we think that the appellant has failed to show that it is entitled to an injunction to halt construction of the Buckworths' house until their plans shall have been submitted to and approved by someone. We say "someone" because the appellant seems to have been badly confused as to who that "someone" should be. The bill is framed on the assumption that the appellant itself is the proper party to exercise architectural control. That, as we have seen, is an erroneous assumption. In its brief in this Court the appellant concedes correctly, we think, that "this matter could have been decided on the basis that the Appellant had no right to insist that it approve the plans prior to the construction of the dwelling of the Appellees." It then urges that even if it had not succeeded to the rights of the Blooms, the plans still should have been submitted to the Blooms for their approval and that they still had an interest because of ownership of 4.3 acres which they had retained. This, of course, involves a radical departure from the claim set up in the bill, but it does seem to have received some consideration in the opinion of the trial court, though the Chancellor was of the opinion that the Blooms had no further interest to protect. The appellant has not made any contention that the Blooms had any duty to purchasers of other lots to enforce the restrictions, they were not made parties to the suit, and for aught that appears no one could care less about it. It is, we think, sufficient to say that no demand was made that the Buckworths submit their plans to the Blooms, that they did not do so, and that there is no sufficient showing that if the plans had been submitted to them they would have disapproved the plans or, in view of the weakness of the evidence as to any potential injury to other property from the design of the Buckworth house, that the Blooms ought to have done so.

We are accordingly of the opinion that the Chancellor's decree dismissing the bill was correct on the facts of this case. We may add that since there was no effort towards self-help by the appellant in abating any alleged violation, the first portion of restriction No. 14 was not involved, and we can see nothing unconscionable about the second portion which would permit the Blooms or the assignee or transferee of their powers to apply for an injunction.

*Decree affirmed; the costs to be paid by the appellant.*