# THOMPSON ET AL. *v.* GUE ET AL.

[No. 110, September Term, 1969.]

*Decided December 5, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY, and SMITH, JJ.

*Robert E. Bullard* for appellants.

*Calvin R. Sanders* for appellees.

FINAN, J., delivered the opinion of the Court.

This is an appeal from a summary judgment granted plaintiffs-appellees ordering defendants-appellants to remove a shed from their property which the court found to have been erected in violation of a restrictive covenant. Plaintiffs-appellees, common grantors of the subdivision consisting of 16 lots known as Ronalee Hills, filed on April 24, 1962, a declaration of covenants applicable to all lots in the subdivision. The preamble to the declaration states its purposes:

> "First: protecting purchasers of the aforesaid lots in said subdivision from depreciation of the value thereof and to assure them of uniformity in the development of the surrounding property; Second: facilitating the sale by the said G. Irving Gue and Doris H. Gue, their successors and assigns, of the land in said subdivision by reason of their ability to so assure such purchasers of such uniformity and protection against such depreciation; and Third: to make certain that said restrictions shall apply uniformly and to the mutual advantage of said G. Irving Gue and Doris H. Gue, and all those who may in the future claim title through them."

The specific covenant which the defendants are alleged to have violated reads as follows:

> "SECOND: No dwelling house, garage, building or structure of any kind or character, and no alterations of any such building or structure shall be constructed or altered on said lot or lots, unless and until complete plans and specifications therefor, showing the cost, type and size thereof, materials to be used and location of the building on the lot shall first be submitted to

and approved by the said G. IRVING and DORIS H. GUE, his wife, their heirs and assigns." [1]

The defendants erected their shed without the approval of the appellees and this lawsuit was commenced in order to compel defendants to remove the structure. The plaintiffs in paragraph 7 of their bill of complaint set forth the gravamen of their action alleging:

"7. That the structure so erected, if continued, will adversely affect the scheme or plan of improvements for the development of the subdivision involved and will make unattractive the area in which the defendants' property is located, and will make the property of the plaintiffs and of the owners of the other lots in said subdivision less valuable and less attractive; * * *"

In their answer to the bill of complaint, the defendants set up the deed by which their land was conveyed to them by the grantors which in pertinent part reads as follows:

"And said party of the first part (grantors) covenants that he will warrant specially the property hereby conveyed; that he is seised of the land hereby conveyed; that he has a right to convey said land; that said party of the second part shall quietly enjoy said land and that he has done no act to encumber said land; and that he will execute such further assurances of said land as may be requisite."

The defendants contend that this language in the deed

---

1. The validity of similar covenants, wherein no objective standard is set forth, was upheld in *Kirkley v. Seipelt*, 212 Md. 127, 128 A. 2d 430 (1957) on the basis that refusal to approve would have to be predicated on a reasonable determination made in good faith "based upon a reason that bears some relation to the other buildings or the general plan of development." Id. at 133. See also cases cited in Kirkley.

should estop the plaintiffs to deny their right to build the shed. In the ordinary situation where uniform restrictions have been placed on a subdivision, the Court has had no trouble in allowing the grantor to bring suit for the enforcement of a restriction against a purchaser who has violated a restrictive covenant impressed upon the property by the common grantor in favor of all the members of the subdivision. This was the situation in *Turner v. Brocato*, 206 Md. 336, 111 A. 2d 855 (1955) relied on by the lower court.[2] In *Brocato*, the purchasers were charged with constructive notice of the existing restrictions which had been filed of record, just as the defendants in the instant case must be charged with constructive notice of the existence of the restrictive covenants running to the benefit of other property owners in the subdivision. However, the *Brocato* case turned on the point that the deed to the purchasers failed to expressly impose the restrictions on the lot conveyed. This Court held such an omission not to be fatal to the enforcement of the restrictions by the grantor because of constructive notice on the part of the grantee. In the instant case, however, the deed from the common grantor to the defendants failed not only to expressly impose the restrictions on the lot sold, but affirmatively extended to the purchasers covenants of special warranty, quiet enjoyment, covenants against encumbrances and further assurances. We think the lower court erred in applying *Brocato* to the instant case, as it presents a factual situation going significantly beyond *Brocato*.

Had the plaintiffs, in their bill of complaint made it clear that they were filing their action in a representative capacity on behalf of the other property owners in the subdivision, then we would be inclined to apply the doctrine of *Brocato*, for we are of the opinion that the

---

2. See 16 Md. L. Rev. 51 (1956), wherein *Brocato*, is the subject of a case note. In examining the rationale of this Court in upholding the implied restrictions in that case, the author made the wry observation that, "The basis for the doctrine is a public policy favoring private zoning arrangements, which are always more secure than public zoning ordinances."

defendants, having had constructive notice of the existence of the restrictive covenants inuring to the benefit of the other property owners in the subdivision, took title subject to the rights of the other property owners and their successors in title to enforce the restrictive covenants. *Kirkley v. Seipelt*, 212 Md. 127, 135, 128 A. 2d 430 (1957).

However, we are of the opinion that the plaintiffs, as grantors of the deed which gave to the defendants a covenant against encumbrances, are estopped from acting in derogation of their own deed. We will discuss the element of estoppel later in this opinion, but at the moment, it suffices to state that we do not think the plaintiffs have the right to bring this action in an individual capacity. Although the plaintiffs are not here in the status of a former owner who was a common grantor, as they allege a present interest in the property, yet, we think their position is analogous to that of a former owner who, as the common grantor, has the right to enforce restrictive covenants in a representative capacity. *Restatement of the Law, Property*, § 550, provides in comment (b) :

> "b. *Representative*. The former owner suing on a promise respecting the use of land must show that there are owners presently entitled to the benefit of the promise and that he is representing them. He will not be entitled to relief merely because he was the original promisee or an original beneficiary of the promise. It is not necessary, however, for him to show that he is acting as their duly accredited agent. It is sufficient for him to show that he has a legitimate interest in the protection of their interests * * *."

However, in the instant case not only is this suit brought in the plaintiffs' individual capacities, but furthermore, there is no allegation or evidence in the record that the other property owners in the subdivision exhibited or had any concern over the breach of the restric-

tive covenants. Cf. *Carroll County v. Buckworth*, 234 Md. 547, 554, 200 A. 2d 145 (1964). Lacking any allegation affirming the representative nature of the suit, we must view it as an action brought in the plaintiffs' individual capacities against which the defendants were free to assert any legitimate defense available to them, even though such a defense might not be available were the suit brought by or on behalf of the other property owners in the subdivision. Within the framework of these facts we think the defense of estoppel was available to the defendants.

A comprehensive discussion of estoppel by deed is found in 28 Am.Jur.2d, II. Estoppel by Deed or Bond, § 4, p. 603, wherein it is stated:

> "Generally, estoppel by deed is based upon equitable considerations. In other words, it rests upon the inequity of allowing the party estopped from asserting a contrary position. The principle is that when a man has entered into a solemn engagement by deed, he shall not be permitted to deny any matter which he has asserted therein, for a deed is a solemn act to any part of which the law gives effect as the deliberate admission of the maker; to him it stands for truth, and in every situation in which he may be placed with respect to it, it is true as to him. It has been stated that it is a mistake to liken an estoppel by deed to an estoppel in pais. It has also been stated, speaking of estoppel by deed in general that the true principle of estoppel, as applicable to deeds, is to prevent circuity of action and to compel parties to fulfil their contracts. * * *"

The problem is brought into focus by a succinct statement in Vol. 2 *Devlin on Real Estate*, 3rd Ed., § 1080, wherein there is a discussion of the effect of a covenant against encumbrances in a deed when there was an outstanding mortgage on the subject property at the time of

the delivery of the deed of conveyance: "A mortgage should be made an exception in the covenants, else it may be said that the grantor covenanted against the encumbrance and thereby it becomes his duty to pay it." See *Estabrook v. Smith*, 6 Gray 572, 66 Am. Dec. 445 and *Drury v. Tremont Improvement Co.*, 13 Allen 168.

Although the case is not pertinent on the facts to the instant case, the doctrine of estoppel by deed was discussed at an early date by this Court in *Casey v. Inloes*, 1 Gill 430, 494 (1844) citing *Jackson ex dem Varick v. Waldron and wife*, 13 Wendel 178, wherein the Court stated:

> "* * * thus, a party in a deed asserting a particular fact, and thereby inducing another to contract with him, cannot, by a denial of that fact, compel the other party to seek redress against his bad faith * * *." *Id.* at 494.

See also *Potomac Co. v. Smoot*, 108 Md. 54, 62, 69 A. 507 (1908); *Phelps v. Phelps*, 17 Md. 120, 134 (1861); and 16 *Md. L. Rev.* 217, 218 (1962).[3] We think that equitable considerations require the application of the doctrine in the case now before us.

Finally, we should note that at the trial below the appellants moved for summary judgment. However, the trial judge returned a summary judgment in favor of the appellees, although in their answer the appellants had controverted the allegation that the subdivision was made less attractive and valuable because of the shed. The question of whether a summary judgment should have been entered without testimony on this issue was not raised on appeal and we therefore need not now consider it. Maryland Rule 885.

The question as to what redress, if any, the defendants, as grantees, may have against the plaintiffs, as the com-

---

3. For a better understanding of the case at bar, it should be noted that we are not here concerned with the question of the doctrine of "estoppel by after acquired title," which is also a form of estoppel by deed.

mon grantors, should suit ultimately be brought against them to enforce the covenants, by other property owners in the subdivision or by the common grantors in a representative capacity, must await determination at a future date, unless otherwise resolved.

*Decree reversed, appellees to pay costs.*