GULF OIL CORPORATION *v.* KARL M. LEVY, TRUSTEE, ETC.

[No. 49, January Term, 1943.]

*Decided March 16, 1943.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY, GRASON, MELVIN, and ADAMS, JJ.

*Charles B. Hoffman,* with whom were *Ritchie, Janney, Ober & Williams* on the brief, for the appellant.

*J. Henry Ditto,* with whom were *Karl M. Levy, Levy & Ditto* and *Cary D. Hall, Jr.,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

This case involves two questions: first, whether any enforceable restrictions have been imposed upon property No. 423 North Fulton Avenue in the City of Baltimore and, second, whether by a change in conditions such restrictions have become non-enforceable.

The Gulf Oil Corporation, appellant, made a contract with the heirs of Theodore M. Bartholomee, late owner of the property, to purchase it for the sum of $12,500, for the purpose of erecting a gasoline filling station thereon. There were provisos in the contract with respect to the acquisition of the adjacent property and securing a permit for the filling station. Both of these conditions have been fulfilled. The property, however, was to be conveyed to the appellant by a good and merchantable title. The contract was made while proceedings were pending in the Circuit Court of Baltimore City for a construction of Mr. Bartholomee's will, and also for sale in lieu of partition. The appellee had been appointed trustee in that cause to make sale of the property. He reported the private sale made by the above contract, and after due publication, it was finally ratified

on January 14, 1942. Thereafter, the appellant declined to take the property on the ground that it was encumbered by restrictions. The trustee filed a petition to compel compliance, or else a resale at the risk of the purchaser. The appellant answered, and the case was heard on an agreed stipulation of facts, testimony and various exhibits. The court below found that there were no restrictions upon the property capable of being enforced, that such restrictions as were mentioned in the evidence had been violated by the owners, that the property had been zoned as commercial, and due to changes in the neighborhood, it was now subject to commercial development. The appellant was directed by the decree to carry out its contract, and from that decree this appeal is taken.

Sometime prior to the year 1855, Caroline Donaldson died seized and possessed of a rectangular tracts of undeveloped land running from Dorsey's Lane, which lay to the west of Fulton Street, east to Gilmore Street, and south crossing Franklin Street to Mulberry Street. It included, therefore, both sides of Fulton Street, now Fulton Avenue, from Franklin Street to Mulberry Street. This property had been acquired by Mrs. Donaldson by deed in 1815. On December 29, 1855, all of the heirs of Mrs. Donaldson except one, he being the grantee, conveyed to Thomas Donaldson that part of the whole tract, beginning at the southeast corner of Franklin and Fulton Streets and running south on the east side of Fulton Street 88 feet, and having a rectangular depth easterly along the south side of Franklin Street 157 feet to Bruce Alley. The property so conveyed included the property in question, No. 423 North Fulton Avenue, and the property adjacent thereto on the south, No. 421 North Fulton Avenue. The deed contained covenants that no improvement should be built upon any of the lots belonging to the parties to the deed, and binding upon Fulton Street, inferior to that which George B. Taylor and John W. Jevens had contracted with the grantee severally to erect on the lot conveyed, which lot he, the grantee, had

agreed to sell in two lots of equal size to Taylor and Jevens. Such improvement is defined in the covenant as a house fronting not less than 20 feet on Fulton Street of proportionate depth and three stories in height, or a cottage equal in value. The deed was signed by all of the heirs except the grantee, Thomas Donaldson, whose signature is not affixed. Two days later, Thomas Donaldson and wife conveyed the lot at the corner, which is the one in question in this case, to George B. Taylor, with the statement that it was to be held with the benefit of all the covenants in the deed of December 29, 1855; Thomas Donaldson himself and his wife in this last deed also make the same covenants for themselves as to their interest in any property on Fulton Street. Such making of these covenants by Thomas Donaldson and his wife is a recognition of the fact that they did not, by accepting the first deed, make the covenants and bind their interest in the other Caroline Donaldson property. The Taylor deed attempts to do this. The Taylor deed is not signed by Taylor, so that he has made no covenant of record binding the property before us. John J. Jevens bought the next adjoining lot to the south. Subsequently all the heirs of Caroline Donaldson leased 44 feet to the south of the Jevens lot to Charles C. Stevenson, and later conveyed the reversion to him. Prior to the conveyance of the reversion, however, all of the heirs of Caroline Donaldson covenanted with Taylor, Jevens and Stevenson by an instrument of writing duly recorded, that they would make no lease, deed or other conveyance of any real estate owned by them on the east side of Fulton Street between Franklin and Mulberry Streets without the insertion of a proviso obliging the grantee so to build as to leave in front of the house a space at least twenty feet in the line of Fulton Street. This instrument of writing was signed by the Donaldsons, but not by Jevens, Taylor or Stevenson.

In 1863, the Donaldson heirs conveyed to James A. Fisher the whole of the square on the west side of Ful-

ton Street between Franklin and Mulberry without any restrictive covenants. In 1870, the Donaldson heirs conveyed to John F. Weishample, Jr., a twenty-two-foot lot on the east side of Fulton Street, to the south of the Stevenson lot, and in the same year they conveyed to the same grantee, John F. Weishample, Jr., a twenty-two-foot lot to the south of his first lot. These last two deeds provided that it was agreed between the parties that when a house should be erected on the front of the described ground, it should set back twenty feet from the building line, be not less than twenty feet in width, and full three stories in height, but that a back building proportionate to the house could be erected. Meanwhile, in 1863, the Taylor lot, which is the one with which we are concerned in this proceeding, was sold for taxes and conveyed to the Rev. Franklin Wilson by the City Collector. The Collector's deed, of course, contains no covenant. Subsequently, in 1873, Taylor and his wife conveyed all their interest to Wilson, referring in their deed to the deed from Thomas Donaldson and wife to Taylor, but incorporating no covenant. In 1877 Wilson and his wife conveyed the property to Theodore M. Bartholomee, In March, 1888, the Donaldson heirs sold a twenty-two-foot lot on Fulton Street to Daniel M. Newbold, subject to the operation of the covenants contained in the deed to Thomas Donaldson. This lot was one of those south of the Weishample lots. Newbold leased a part of this lot containing fourteen feet eight inches and then sold the reversion to Philip Halle, to whom he guaranteed a clear title. Halle declined to take the property because of this covenant, and it came before this court in 1888 in the case of *Halle v. Newbold,* 69 Md. 265, 14 A. 662. The court held that the lot sold by Newbold to Halle was encumbered by the condition, and that the title was not clear. It was held unnecessary to decide whether the covenant ran with the land and because the court held that it was an easement of servitude on the lands belonging to the heirs of Caroline Donaldson in favor

of the land then owned by Thomas Donaldson, and could be enforced by his heirs and assigns against any assignee of the heirs of Caroline Donaldson. The effect of that holding was that the condition could be enforced by the owners of lots 423 and 421 against any of the other properties formerly owned by the Caroline Donaldson heirs. It does not, however, touch upon the question whether any such restriction is placed upon lots 423 and 421. The appellees claim that no such restriction was ever created against them, and there seems to be substance in their contention, so far as the express wording goes. It is, however, contended on the part of the appellant that the whole transaction shows a uniform plan of development of the whole Donaldson tract of land, acquiesced in by the original purchaser of lots 423 and 421, and by which they and their heirs and assigns are equitably bound.

There have been a number of decisions of this court showing what it is necessary to prove in order to establish a uniform plan of development restrictions. *McKenrick v. Savings Bank*, 174 Md. 118, 197 A. 580, and cases there cited. There are differences in the various covenants in this case, and there is also evidence of their disregard, even in the construction of the original buildings. These facts might be persuasive in leading us to hold that no uniform plan can be found with respect to the entire tract. However, in view of our conclusion on the second question presented, it becomes unnecessary for us to go further into the question of the original intentions of the parties.

Restrictions on the free use of land are not favored. Where such restrictions are established without limit as to time, it is generally been held that they are limited by their reasonableness, in view of conditions. Where conditions have so changed so as to make the restrictions no longer reasonable, they will become unenforceable. That rule has been well stated in a Florida case, annotated in 103 *A. L. R.* 725, as follows: "Such restric-

tions were therefore subject to the general rule applicable to restrictive covenants of this kind that, where the time during which a restrictive covenant is to endure has not been expressly limited by the parties, it should be implied that some reasonable limitation adapted to the nature of the case was intended, and that such restrictions as the stated covenants imposed on the use of any particular grantee's property, being in derogation of the otherwise free use and enjoyment of same, should be construed as extending for no longer period of time than the nature of circumstances and purpose of their imposition would indicate as reasonable for the duration of their enforcement without undue and inequitable prejudiçe to the property rights purchased and acquired by the original grantee and his successors in title, subject to such restrictive covenants." *Barton v. Moline Properties,* 121 Fla. 683, 164 So. 551, 556. To the same effect is 14 *Am. Jur.* 615; *American Weekly, Inc. v. Patterson,* 179 Md. 109, 16 A. 2d 912 (and cases cited on pages 115 and 915, respectively) ; and *Whitmarsh v. Richmond,* 179 Md. 523, 20 A. 2d 161.

An examination of the evidence in the case before us shows that Charles H. Steffey, a well-known real estate operator in the City of Baltimore, who had been familiar with the neighborhood for over thirty years, testified that when he first knew it, it had a very high class type of single family occupancy, that it has been steadily on the decline for twenty years, and has been declining very rapidly in the last few years. The property across the street is commercial, there is a gasoline filling station there and a second-hand car lot and a store. The property to the south has been converted into apartments. The testimony of Mark A. Elliott, who appraises property for building associations, is that he has known this neighborhood for forty years. When he first knew it, there were very high class people living there, in individually owned houses, and the owners took a great deal of pride in keeping the property up. The neighborhood

started to decline about fifteen or twenty years ago, and now most of the houses are rooming houses and apartments. The property has not been kept up. Most of the surrounding property, other than the immediate block, is occupied by colored people, which was not formerly the case. Oscar G. Levy, the son-in-law of the former owner, Theodore M. Bartholomee, lived in 423 Fulton Avenue for thirty-four years, leaving there in March, 1941. He said that when he first moved there it was a very fine residential neighborhood. All of the houses on the east side of Fulton Avenue were occupied by single families who maintained very nice homes, had their horses and carriages, and had flowers and shrubbery and trees in their yards. The change started ten or twelve years ago. The old families moved away and a different type of people came in, living in rooms and makeshift apartments. The adjacent property, 421, was made into five apartments. Across Fulton Avenue on the west side there was formerly a home for the aged of the Methodist-Episcopal Church with an open space to the south, trees, shrubbery and lawn. That has been razed, and the lot is now occupied by a filling station and a used car lot, in which there is some parking. There are stores on the northeast and northwest corners of Fulton Avenue and Franklin Street. Mulberry Street to the south is occupied entirely by colored people, and Mount Street, the next street east from Fulton Avenue, is occupied entirely by colored people, a change from conditions existing at the time he moved there.

In addition to this testimony, it appears that the property along Franklin Street between Fremont Avenue and Franklintown Road, which includes the property in question, has all been zoned for commercial use by a city ordinance. The properties 421 and 423 North Fulton Avenue are in a first commercial use, B area district, and the Board of Zoning Appeals has issued a permit for the construction of a gasoline service station thereon, without any protests having been filed against it.

From this evidence, which is undisputed, we find that circumstances have greatly changed since the attempted establishment of any restricted area on Fulton Avenue in 1855, nearly ninety years ago. The purpose of the imposition of the attempted restrictions, which was to preserve a high class residence neighborhood, has long since ceased to exist. There is no longer any basis for holding that if they ever did exist, they now constitute a hindrance to the free transfer of property. Such restrictions and limitations, if they ever were imposed, have been removed by the removal of the reasons therefor. They are not now in existence, and cannot be enforced. Therefore the property, No. 423 North Fulton Avenue, can be sold free and clear of such restrictions, and the appellee can give the appellant a good and merchantable title to that property.

For the reasons above outlined, the decree of the Circuit Court of Baltimore City will be affirmed.

*Decree affirmed, with costs.*