ELI TALLES, ET AL. *v.* AVRUM K. RIFMAN

[No. 161, October Term, 1946.]

*Decided June 11, 1947.*

The cause was submitted to MARBURY, C. J., COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Emanuel Gorfine* submitted on brief for the appellants.

*Kenney & Kaiser* and *J. Carroll Power* submitted on brief for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This is a suit for specific performance of a contract to purchase real estate. The appellee was a vendor and

appellants were the vendees. The contract provides for the conveyance of a good and merchantable title. The appellants claim that this cannot be given because of certain restrictions, and the question before the court was whether these restrictions were still operative and binding on the property. The Chancellor held that they were not, and decreed performance. From this decree an appeal was taken here.

The property agreed to be sold was the south side of Norfolk Avenue in Baltimore, bounded on the east by Lyndhurst Avenue and bounded on the west by Granada Avenue, with the exception of one lot, 40x100, known as Lot 12. The southernmost boundary of the lots sold was to be a ten-foot alley to be opened between Granada Avenue and Lyndhurst Avenue. The property is a part of block 13 on the plat of Forrest Park Highlands, recorded by the Forrest Park Highlands Company. This plat covered 666 lots and three reserved blocks. The record does not show the date of the recording of the plat, but it was prior to October 5, 1910. Up to that date Forrest Park Highlands Company had sold 12 of the 666 lots without restrictions and had sold 122 lots subject to restrictions limited to 21 years. One of these restrictions was that no building other than a single dwelling house was to be erected on any lot. On October 5, 1910, the remaining 532 lots were conveyed by Forrest Park Highlands Company to the Oakfield Realty Company. This deed included all of block 13 and it contained no restrictions. The Oakfield Realty Company conveyed 21 lots without restrictions during the years 1910 and 1911, and conveyed 434 lots with the same restrictions as that contained in the Forrest Park Highlands Company lots, with a 21 year time limit. On February 3, 1911, Oakfield Realty Company conveyed the 20 lots in Block 13 to the Crescent Realty Company. This deed contained no restrictions. On February 24, 1911, an agreement was filed in the land records with reference to these lots. In this paper the Crescent Realty Company agreed with the Oakfield Realty Company as

follows: "Now Therefore In consideration of the premises and the sum of Five Dollars ($5) receipt whereof is hereby acknowledged the said Crescent Realty Company its successors and assigns hereby agree with the said Oakfield Realty Corporation its successors and assigns that they will not erect or cause to be erected any row of brick dwellings on the lots hereinabove mentioned nor will they erect or cause to be erected more than one dwelling house on any lot having a frontage of forty (40) feet hereinabove mentioned." This agreement was executed only by the Crescent Realty Company. It recites the prior conveyances and the mutual agreement that Crescent Realty Company should not erect a row of brick dwellings, nor erect more than one dwelling on any one lot having a frontage of 40 feet and that such restrictions were not incorporated in the deeds. Then follows the paragraph above quoted.

The lots included in the contract of sale between the parties to this cause are lots 11, 12, 13, 15, 16, 17, 18, 19 and 20. Lot 14 has been sold at tax sale to the Mayor and City Council of Baltimore and is not included. The appellee acquired Lots 19 and 20 at private sale under deeds without restrictions. He purchased lots 11, 12, 13, 15, 16, 17, 18 from the Mayor and City Council of Baltimore which previously had acquired title by tax sale. He subsequently received quitclaim deeds to these lots. None of these deeds, either those from the Mayor and City Council or the quitclaim conveyances, contained any restrictions. Block 13 is entirely unimproved except for three lots. All of the unimproved lots except lot 14 are owned by the appellee. There are three lots in the southern half of the block on Dalrymple Avenue which are owned by various individuals, and on these lots detached dwellings have been erected. The entire block to the east of and adjoining block 13 consists of row houses except for two detached houses. The block to the west and adjoining block 13 is entirely unimproved. The block immediately to the north and facing block 13 consists entirely of row houses except for one detached

house. The block immediately to the south and facing block 13 consists entirely of row houses. The south side of Norfolk Avenue, upon which the lots in question face, is unimproved for about four or five blocks to the west. The three blocks to the east are improved with row houses, except for six detached houses. The north side of Norfolk Avenue in the next block to the west is improved by row houses and detached houses and the block opposite and those next below to the east are improved entirely by row houses. Other row houses have been or are being erected in various parts of the entire subdivision. The Oakfield Realty Company went out of existence on May 25, 1927, and the Crescent Realty Company went out of existence on February 14, 1936, according to the records of the State Tax Commission. By Ordinance 1247 of the Mayor and City Council of Baltimore, approved March 30, 1931, Block 13 was zoned for residential row house use.

On this statement of facts (which is agreed upon) the appellants claim that the tax sale did not extinguish applicable restrictions, that the fact that the property has been zoned for row houses does not abrogate the restrictive covenants, that the covenant in the agreement of February 24, 1911, runs with the land and may be enforced by the assignees of the parties, and that there have been no changes of condition in the restricted area. The appellees, on the other hand, contend that the burden of the restrictive agreement, if it ever existed, was removed by the tax sales, that the restrictive agreement was personal to the contracting corporations and is now unenforceable, and that such agreement not having been expressly limited by the parties was intended to continue no longer than the circumstances and purpose of its imposition existed, and that these circumstances and purposes have long since been altered in this particular case.

The law respecting restrictive covenants has been carefully considered by this Court in a number of recent cases. These are *McKenrick v. Savings Bank,* 174 Md. 118, 197 A. 580; *Whitmarsh v. Richmond,* 179 Md. 523, 20

A. 2d 161; *Yorkway Apts. v. Dundalk Co.*, 180 Md. 647, 26 A. 2d 398; *Gulf Oil Corporation v. Levy*, 181 Md. 488, 30 A. 2d 740; *Matthews v. Kernewood, Inc.*, 184 Md. 297, 40 A. 2d 522 and *Scholtes v. McColgan*, 184 Md. 480, 41 A. 2d 479. From these cases can be readily deduced the principles applicable to the case before us. It is only necessary to say in general that restrictions are not favored in the law, that any inhibitions against the free transfer of land are strictly construed, and that those making them are presumed to have made them with reference to the conditions then existing, and if there has been a material alteration or change in those conditions, the courts will hold that the reason for the restrictions having been removed, the restrictions themselves go with them.

It is obvious in the case before us that upon practically all of the improved property surrounding Block 13, there have been erected row houses, so that the entire neighborhood has become a row house community. There is nothing in the record to show that it was intended that Block 13 should be an oasis of detached houses in the midst of all of the other types surrounding it. On the contrary, it appears that originally it was intended that there should be no row houses in the entire subdivision, but this restriction was limited to a duration of 21 years, and has long since expired. The unsold land of the Forrest Park Highlands Company was subsequently foreclosed in a mortgage proceeding, and in a case which came to this Court involving the restrictions on the property sold under the mortgage, it was held that the foreclosure sale put an end to whatever binding effect might have existed in these restrictions. *Boyd v. Park Realty Corporation*, 137 Md. 36, 111 A. 129, decided in 1920. The question before us, therefore, is narrowed to the particular block, and the present effect of the new set of unlimited restrictions placed upon this block by the Crescent Realty Company.

If the change in conditions in the surrounding property has removed the reason for these restrictions, then,

16

whatever may have been their original effect, they are no longer existent. The determination of this question adversely to the contention of appellants will dispose of the case and we, therefore, turn our immediate attention to its consideration.

The appellant contends that changes, even radical changes, in the adjoining neighborhoods, do not effect the restriction in Block 13, and, therefore, there is no ground for equitable relief. He cites in this connection *Vernon v. R. J. Reynolds Realty Co.,* 226 N. C. 58, 36 S. E. 2d 710; *Dooley v. Savannah Bank & Trust Co.,* 199 Ga. 353, 34 S. E. 2d 522; *Cuneo v. Chicago Title & Trust Co.,* 337 Ill. 589, 169 N. E. 760. We do not disagree with the contention that the change must affect the property in question, but we do not think the courts are limited to an investigation of what has happened in the restricted property itself. See *Trustees of Columbia College v. Thacker,* 87 N. Y. 311, 41 Am. Rep. 365; *McClure v. Leaycraft,* 183 N. Y. 36, 75 N. E. 961, 5 Ann. Cas. 45; *Forstmann v. Joray Holding Co.,* 244 N. Y. 22, 154 N. E. 652; *Page v. Murray,* 46 N. J. Eq. 325, 19 A. 11; *Hess v. Country Club Park,* 213 Cal. 613, 2 P. 2d 782.

In the case of *Gulf Oil Corporation v. Levy, supra,* we had before us a state of facts where certain restrictions had been placed upon property on Fulton Avenue in the City of Baltimore in 1855. In 1888 this restriction was upheld by this Court in *Halle v. Newbold,* 69 Md. 265, 14 A. 662. In 1943 another case involving the same restrictions came to us. In this latter case it appeared that the neighborhood had formerly had a very high class type of single family occupancy, but that it had been on the decline for a number of years. We considered the conditions of property across the street, of property surrounding the lot in question, and of property in the next street, and determined that as the reason for the importance of the restrictions had long since ceased to exist, they should no longer constitute a hindrance to the free transfer of the property. It seems to us obvious, in this case, as it did in the last-mentioned case, that

while the restrictions themselves may be limited to a single block, when the Court examines the reason for their imposition to determine whether that reason continues or has ceased to exist, its consideration should not be confined to the area restricted. In the *Gulf Oil* case the whole neighborhood which had once been one of fine residences, had become a rooming house section of the city. In the case before us, what had been originally intended as a community of detached houses, has become a row house development. The change in the surrounding blocks has rendered valueless and burdensome the restrictions on Block 13 if any ever existed. Crescent Realty Company and the Oakfield Company may not have foreseen this change, but we must assume that they intended to adopt restrictions to keep the block in the same general condition as other property in the neighborhood. The purpose of such restrictions is to maintain a higher standard of value, not to make it more difficult to sell lots for one kind of development in a neighborhood devoted to what is generally considered a cheaper type of property. We do not mean to hold that the erection of one block of row houses in a neighboring block would destroy such restrictions in another block. But in the case before us, we have row houses on all sides and throughout the entire subdivision. Under these circumstances we find that the reason for the restrictions has ceased to exist and the restrictions are therefore no longer effective.

This conclusion makes it unnecessary for us to consider the other contentions made by appellants. The decree will be affirmed.

*Decree affirmed, with costs.*