GEORGE R. NORRIS, ET UX., *v.* T. BAYARD WILLIAMS, ET AL.

[No. 152, October Term, 1946.]

*Decided July 8, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*T. Bayard Williams, Jr.,* and *Johnson Bowie* for the appellants.

*W. Leroy Ortel* for the appellees.

DELAPLAINE, J., delivered the opinion of the Court.

This suit for specific performance was brought by T. Bayard Williams and William G. Lynch, trustees of the estate of John T. Grace, deceased, to compel George R. Norris and A. Margaret Norris, his wife, to comply with their agreement to purchase certain real estate in Dundalk.

The contract of sale, executed on June 23, 1946, recites that the trustees bargain and sell to Norris and his wife the parcel of about one acre of land at the southwest corner of Dundalk and Baltimore Avenues for the sum of $45,000; that the purchasers made a partial payment of $2,500; and that the balance will be paid in cash within thirty days therefrom. The contract contains a proviso that in the event this property is not zoned for commercial use, or cannot be used as such for any other reason, then the contract shall be void and the deposit shall be refunded to the purchasers.

The record shows that Grace devised his estate to the trustees with direction to pay the income to his widow for life, and with power to sell and invest the principal. On the land is the house in which he resided until his death in 1921. His widow continued to live there for twenty-five years, and after her death the trustees found no one interested in buying the place for a residence. The land has been zoned by the Zoning Board of Baltimore County for commercial use. But the purchasers refused to settle on account of the fact that the deed executed by Grace and his wife on February 14, 1917, conveying to the Eastern Land Company all of their fifty-acre tract of farm land except the parcel now in question, contains a covenant that for the period of fifty years the parcel excepted shall be used for residential purposes only.

It was shown that the property is now located in the business section of Dundalk, and that the restriction cannot benefit any one. The chancellor accordingly ordered the purchasers to pay the balance of $42,500, with interest from the date of the decree, upon receiving a

deed from the trustees conveying the property free and clear of the restriction. The appeal is from that decree.

The law is clear that where a grantor imposes a restriction upon land conveyed for the benefit of land which he retains, it will be binding upon the grantee and his successors in title; and likewise where a grantor imposes a restriction upon land retained for the benefit of land which he conveys, the restriction will be binding upon himself, his heirs and assigns. *Wood v. Stehrer,* 119 Md. 143, 148, 86 A. 128; *McKenrick v. Savings Bank of Baltimore,* 174 Md. 118, 122, 197 A. 580. The Maryland Conveyancing Act provides that no estate above seven years shall pass or take effect unless the deed conveying the same shall be executed, acknowledged and recorded as therein provided. Code, 1939, art. 21, sec. 1. This Act is applicable to covenants for easements in land, but it does not require that a covenant restricting the use of land shall be recorded in a separate instrument. The method of creating the restriction in this case was practical and appropriate, and was authorized by the statute as a means of safeguarding the substantial property right in the land reserved. *Lowes v. Carter,* 124 Md. 678, 685, 93 A. 216. However, restrictions upon the use of land are in derogation of the natural right which an owner possesses to use and enjoy his property, and are repugnant to trade and commerce. Consequently restrictive covenants are construed strictly against their establishment and effect, and liberally in support of the unrestricted use of the land. *Himmel v. Hendler,* 161 Md. 181, 155 A. 316; *Ferguson v. Beth-Mary Steel Corporation,* 166 Md. 666, 172 A. 238; *Baltimore Butchers' Abattoir & Live Stock Co. v. Union Rendering Co.,* 179 Md. 117, 17 A. 2d 130; *Yorkway Apartments v. Dundalk Co.,* 180 Md. 647, 26 A. 2d 398; *Matthews v. Kernwood, Inc.,* 184 Md. 297, 305, 40 A. 2d 522; *Scholtes v. McColgan,* 184 Md. 480, 490, 41 A. 2d 479. It is well settled that, where the duration of a restrictive covenant has not been expressly limited, it will be implied that some reasonable limitation adapted

to the nature of the case was intended, and the restriction will be construed as extending for no longer period of time than the nature of the circumstances and the purposes of the imposition indicate as reasonable for the duration of its enforcement without undue prejudice to the property rights acquired by the grantee and his successors in title. *Whitmarsh v. Richmond,* 179 Md. 523, 529, 20 A. 2d 161; *Gulf Oil Corporation v. Levy,* 181 Md. 488, 30 A. 2d 740.

The land purchased by the Eastern Land Company from Grace was one of the tracts acquired during the First World War for the Dundalk Company to provide building sites for homes for war workers, particularly those employed at the plant of the Bethlehem Steel Company at Sparrows Point. The record shows that about 1,000 acres of land were acquired for the Dundalk Company at a cost of about $200,000. By 1918 this truck farm section was transformed into a thriving community. One of the most common forms of creating building restrictions is by the establishment of a general building plan covering a tract divided into a number of lots. In this case, however, it is conceded that, if the Dundalk Company ever adopted any definite building plan for the development of the forty-nine acres acquired from Grace, such plan was soon abandoned on the west side of Dundalk Avenue. Within a short time Grace's home on the west side was in the midst of the business district. Dundalk Avenue is separated by railway tracks running from Baltimore to Sparrows Point. The residential section grew up on the east side of the avenue; the business district on the west side. There is now a continuous line of stores both to the south and the north of the Grace acre on Dundalk Avenue. Norris owns the adjoining property to the south, having purchased it from the Dundalk Company in 1919 with the right to use it for business purposes. It is a part of the tract acquired from Grace in 1917. Norris built a garage upon it, and later converted the property into store rooms with a bowling alley in the rear. In the rooms fronting

on the avenue are a rsetaurant, paint shop, bakery, and liquor store. Adjoining the Norris property on the south are a taxicab office and garage. Likewise, on the northwest corner of Baltimore Avenue is a large filling station, and to the north are a food store, hardware store, tobacco shop, men's clothing store, and restaurant. In the next block, north of Patapsco Avenue, are a pool room, laundry, clothing store, barber shop, and restaurant. Also in other streets west of Dundalk Avenue, there are business properties of various kinds. In the field west of the property in question is the Dundalk sewage disposal plant.

Under the circumstances now existing, the covenant made by Grace and his wife in 1917 is no longer effective for the purpose for which it was imposed. It is evident that the purpose of the restriction was to make the locality a suitable one for residences; but, owing to the general growth of the town, and the development of the neighborhood west of the avenue as a business district, this purpose can no longer be accomplished. It is conceded that there is no one who could enforce the restriction. But even if it could be enforced, it would not restore to the locality its residential character. It would, therefore, be oppressive and inequitable to give effect to the covenant. As the changed condition of the locality has resulted from causes other than breach of the covenant, it is clear that to enforce the restriction could have no effect other than to injure and harass the owners without effecting the purpose for which it was intended. We recognize that a court of equity, by decree in a suit for specific performance for the sale of real estate, may in a proper case remove a restriction as a cloud on title. *Whitmarsh v. Richmond,* 179 Md. 523, 527, 20 A. 2d 161; *Talles v. Rifman,* 189 Md. 10, 53 A. 2d 396; *Barton v. Moline Properties,* 121 Fla. 683, 164 So. 551, 103 A. L. R. 725.

Usually the duration of a restriction upon the use of land is not expressly limited. In the case before us the duration of the restriction was definitely limited to

fifty years, from February 14, 1917, to February 14, 1967. Thus more than thirty years of the life of the covenant have elapsed. We now hold that, even though the duration of a restrictive covenant is expressly limited, equity will not enforce the covenant where a considerable part of the life of the covenant has elapsed and where, owing to a change in the character of the neighborhood, not resulting from a breach of the covenant, the reason for enforcement of the covenant no longer exists, and such enforcement would merely encumber the land and injure or harass the covenantor without benefiting the covenantee. For example, in a case arising in New York City, where the owner of the lot on the southwest corner of 145th Street and St. Nicholas Avenue entered into a covenant in 1886 that he would not erect any apartment house thereon within the period of twenty-five years, the Court of Appeals of New York in 1905 held that, although only nineteen of the twenty-five years had elapsed, the covenant was nevertheless unenforceable, because its purpose had been defeated by the unexpected action of others in erecting apartment houses in the immediate vicinity. *McClure v. Leaycraft*, 183 N. Y. 36, 75 N. E. 961, 5 Ann. Cas. 45.

In view of the fact that the restriction imposed upon the property in this case is no longer effective and enforceable, the decree of the chancellor will be affirmed.

*Decree affirmed, with costs.*