ESSO STANDARD OIL CO. *v.* MULLEN
[No. 211, October Term, 1951.]

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*L. Vernon Miller,* with whom was *Franklin G. Allen* on the brief, for appellant.

*J. Francis Ford,* with whom was *Joseph H. A. Rogan* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of specific performance of an agreement to lease two lots on the corner of Park Heights Avenue and Rogers Avenue to be used for a gasoline service station, in apparent violation of restrictive covenants, in a prior deed to the property, against the erection thereon of buildings other than residences, and its use for business occupations. The chancellor held that the restrictions were unenforceable.

The land records show that in 1906 the Hoopes Real Estate Company mortgaged a tract of land at the northeast corner of Park Heights Avenue and Rogers Avenue and filed a plat dividing the mortgaged property into forty-nine lots, for the purpose of permitting the partial release of the mortgage as lots were sold. Lots 1 and 2 of Section A were conveyed to the Commonwealth Bank of Baltimore on August 17, 1906, subject to the restrictions therein contained "for the protection of the other land of the grantor * * * and which by acceptance of this deed, the Commonwealth Bank of Baltimore, for itself, its successors and assigns, covenant and agree with the Hoopes Real Estate Company of Baltimore City, its successors and assigns, to observe, keep and

perform." The Bank conveyed these lots to John Trainor by deed dated October 15, 1908, there being no reference to restrictions in the deed. By the residuary clause of Trainor's will, the lots passed to the appellee. By a series of conveyances between 1906 and 1916, Hoopes conveyed fifteen other lots in the tract to other grantees, with similar restrictions. On May 28, 1917, Hoopes conveyed the remaining lots without restriction. On July 17, 1917, Hoopes was dissolved by decree of the Circuit Court. It is conceded that the property is now zoned "first commercial", and a permit has been granted without protest. For the past fifteen years the building on lots 1 and 2 has been occupied by a bakery shop.

The first point raised is whether the fact that Hoopes did not bind itself to restrict the remainder of the tract, when it made the first conveyance containing the restriction, would render the restriction unenforceable. The appellee relies strongly upon the case of *Whitmarsh v. Richmond,* 179 Md. 523, 20 A. 2d 161, 163. In that case, however, the court stressed the fact that the covenant was "clearly for the benefit of the company, and not for the benefit of its successors and assigns". The corporation had been dissolved and had no standing to sue. In the instant case the covenant ran expressly to Hoopes, "its successors and assigns" and was "for the protection of the other land of the grantor". Moreover, identical covenants were incorporated in the next fifteen conveyances by the grantor. Even in the absence of proof of a general scheme of development, "it has been held by this court that restrictions are enforceable if it clearly appears from the intention of the parties that they should be mutual, and that they were imposed by the grantor for the benefit of his land and were not merely personal." *Scholtes v. McColgan,* 184 Md. 480, 492, 41 A. 2d 479, 485, citing *Clem v. Valentine,* 155 Md. 19, 141 A. 710. Cf. *Raney v. Tompkins,* 197 Md. 98, 78 A. 2d 183 and *Middleton Realty Co. v. Roland Park Civic League,* 197 Md. 87, 78 A. 2d 200. See, however, *Oak Lane Corporation v. Duke,* 196 Md. 136, 75 A. 2d 80, 82.

We find it unnecessary to decide whether the covenants are unenforceable on the ground that they are personal or unilateral, for there is abundant evidence to support the chancellor's finding that there has been such a change in the neighborhood as to render the restrictions unenforceable in any event. It was shown that the neighborhood is now dominantly and progressively commercial. There is a filling station on the southeast corner, and business establishments on the other two corners. On both sides of Park Heights Avenue and Rogers Avenue for several blocks the development is solidly commercial, although there are a few surviving residential frame dwellings to the north of the lots in question, one of which, however, is occupied by a paperhanger. In the tract in question, many of the interior lots have not been built upon, and many are unrestricted. The change in character is perhaps not so pronounced in the tract in question as in the surrounding area, particularly along the main arteries. However, we are not confined to a consideration of the particular area restricted. *Talles v. Rifman*, 189 Md. 10, 17, 53 A. 2d 396. Cf. *Norris v. Williams*, 189 Md. 73, 78, 54 A. 2d 331, 4 A. L. R. 2d 1106; *Gulf Oil Corp. v. Levy*, 181 Md. 488, 30 A. 2d 740, and *Whitmarsh v. Richmond, supra*. It is rather significant that the location of the property in the *Whitmarsh* case was in this same neighborhood. Without extending the principles laid down in the cases cited, we think the evidence shows that the restrictions as applied to the lots in question, have outlived their usefulness. "Equity will not enforce the covenant * * * where, owing to a change in the character of the neighborhood, not resulting from a breach of the covenant, the reason for enforcement of the covenant no longer exists, and such enforcement would merely encumber the land and injure or harass the covenantor without benefiting the covenantee." *Norris v. Williams, supra*, 189 Md. at page 79, 54 A. 2d at page 334.

*Decree affirmed, with costs.*