EASTON ET UX. *v.* THE CAREYBROOK CO., INC., ET AL.

[No. 184, October Term, 1955.]

*Decided June 14, 1956.*

The cause was argued before Brune, C. J., and Dela-plaine, Collins, Henderson and Hammond, JJ.

*William B. Bowie,* with whom were *Ginsberg & Ginsberg* on the brief, for appellants.

*Earl J. Lombard,* with whom were *James F. Vance, Hayden S. Garber, Forest Gordon* and *Lombard & McClure* on the brief, for appellees other than Edward A. Lyons and Willa R. Lyons. *Thomas B. Lawrence* for appellees, Edward A. Lyons and Willa R. Lyons.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court for Prince George's County directing the appellants to convey to the appellees, Edward A. Lyons and wife, a parcel of land containing approximately 6,000 square feet, without cost to the appellees. The proceeding for injunction and damages was instituted by The Careybrook Co., Inc., and sixteen other lot owners in what is known as the Careybrook Subdivision, to enforce a restrictive covenant contained in a deed from the company to the appellants dated July 6, 1950, conveying Lot No. 1 in the subdivision, as shown on a recorded plat and containing about 38,100 square feet. Covenant 13 provided: "No lot shall be divided in such a manner as to result in any lot having an area of less than 16,000 square feet. For the purpose of computing this minimum area, there may be included any portion of a lot dedicated to public use."

The only other covenants that seem at all pertinent to the present controversy are those providing: that "all dwellings shall be built for single-family occupancy", that no shop or store shall be erected or noxious trade carried on upon any lot, and that certain setbacks be observed. It is further provided that the covenants "run with the land and shall be binding on all parties or persons under them until January 1, 1959", and for further periods unless modified by a vote of the majority of the lot owners; and that "if the parties hereto, or any of them, or their heirs or assigns, shall violate * * * any of the covenants * * *, it shall be lawful for any other person * * * owning or occupying any of the land herein conveyed, to * * * enjoin him or them from so doing, or to recover damages * * * or both." Similar covenants were included in the deeds

to all the other lots in the subdivision that have been conveyed. The subdivision contains about 20 acres of land, laid out in 23 lots, all but one of which have been sold and conveyed by the company.

Shortly after the appellants acquired Lot No. 1 they conveyed a part of Lot No. 1, known as Parcel A and containing 16,000 square feet, to a Mr. Ramey who in turn conveyed it to Mr. Boswell, one of the complainants, who built a residence thereon. On November 28, 1952, the appellants conveyed another part of Lot No. 1, known as Parcel B and containing 16,171 square feet to themselves and to Sylvester E. Theiss and wife, and their survivors, heirs and assigns. The grantees constructed a house on Parcel B which they conveyed on January 4, 1954, to Edward A. Lyons and wife, who were named as respondents in the bill of complaint and also filed a cross-bill, praying that any damages awarded against them be paid by the Eastons. In each of the deeds conveying Parcel B there was a clause "Subject to the covenants [and restrictions] of record." The effect of these conveyances was to leave title to the remainder of Lot No. 1, known as Parcel C and containing about 6,000 square feet, in the appellants. This is a strip of land 40 feet in width running across the rear of Parcels A and B. The appellants own a lot immediately adjoining Parcel C opposite Parcels A and B, but in another subdivision known as Cedar Ridge, on which they have constructed a substantial dwelling. They are using Parcel C for the purposes of a private driveway leading to their garage, and disclaim any intention to use it for other purposes or to sell it. It was shown in the testimony that they were notified by letter dated May 29, 1951, before they made any conveyance of Parcel B, of the claim that their proposed action would be construed by the company as a violation of Covenant 13 and would subject them to suit, but no suit was filed until September 1, 1954.

It is well established that covenants restricting the use of property are valid and enforceable at the instance of other lot owners in an area developed according to a general plan. *Turner v. Brocato,* 206 Md. 336, and cases cited. This is particularly true where the violator has actual as well as constructive notice. *Coomes v. Aero Theatre, etc.,* 207 Md.

432; *King v. Waigand,* 208 Md. 308, 311. In the instant case Mr. Easton was one of the original promoters and developers of Careybrook Subdivision, and prepared or approved the covenants. He testified that "The purpose and intent of the covenant [13] as I understood it was to insure there would be large lots and the houses would be far apart and privacy would be insured. * * * no small houses would be built on small lots, which would reduce the value of all the property."

He also testified: "If I had retained that property [Parcel C] with the purpose of building on it, I think it would be in violation." Since he did not intend to use it as a lot for building purposes, but only for a driveway, he contends that there was no violation of the spirit of the covenant. The difficulty with this argument, apart from any question of laches, estoppel or comparative injury, is that there is no covenant against the erection of more than one dwelling on the whole or any part of the lot originally conveyed to him, or against any other use thereof. The only restriction, except for the setback provisions, is against division into lots of less than the specified size, and the retention of Parcel C obviously created a lot in violation of the covenant. It was probably assumed that owners who could not subdivide would have no inducement to overbuild, but the only legal protection afforded is against subdivision into lots of less than 16,000 square feet. We find no merit in the contention that the restriction is an unreasonable restraint upon alienation. Division is a type of use. There are cases holding that a restraint upon further subdivision will not be implied from the mere recording of a plat on which lots of a particular size are designated. See Note 57 *A. L. R.* 764. It is assumed in these decisions that an express covenant against further subdivision would be enforceable, and we have found no case to the contrary.

But on the question of the relief to be afforded, we differ with the Chancellor's solution of the problem. By the decree the appellants are ordered to convey Parcel C to the owners of Parcel B without cost to the latter. The result is that these purchasers from the appellants will receive more than they bargained for when they bought a lot containing 16,171 square feet and a completed house, at a price of some $18,000, with

which they are entirely satisfied. Again, the result is to force them to take title to, and assume the liability for taxes and upkeep on, a parcel of land that is unmarketable as a separate unit and which they have never offered to acquire. It is true that the Lyons do not challenge the decree in this respect, but the only contention raised in their brief is that the conveyance of Parcel B to them by the deed dated January 4, 1954, should not be set aside or their possession disturbed. We agree. Parcel B was carved out, and Parcel C created, more than a year before they entered the picture, and while the complainants registered a complaint in 1951, they stood by until 1954, after the house had been completed and the conveyance to the Lyons had been made. Moreover, Parcel B complied in its dimensions with the covenant. Injunctive relief against the Lyons should be denied because of the great disproportion between the harm to them and the benefit to the complainants. *Restatement, Property,* § 563 and Comment (c). Cf. *Easter v. Dundalk Holding Co.,* 199 Md. 303, 305, and cases cited. There was no proof of actual damage to any of the complainants. Their chief concern was that the violation in the instant case, if ignored, might lead to other and more serious violations. Mr. Lyons testified without contradiction that Mr. Easton's use of Parcel C as a driveway did not injure him in any way. Mr. Boswell did not testify at all.

The appellants strongly contend that the complainants are not entitled to any relief, on the ground of laches. They argue that the complainants stood by while they were building their house and garage in Cedar Ridge, and improving the driveway on Parcel C. They say that this driveway affords the only practicable entry to their garage, and it would be a manifest hardship if they should lose the use of it. The argument has force, not so much on the point of laches, as showing a disproportion between harm and benefit. If the appellees had acted promptly, before the conveyance of Parcel B and the construction of the driveway, of which they had notice, the appellants might have made other arrangements for the retention of an easement. We think it would be inequitable under the circumstances to deprive the appellants of the use of the driveway by a conveyance of the property to the Lyons

in fee simple, without any demonstrable benefit to the complainants. We think the proper solution is that a decree should be framed enjoining the appellants, their heirs and assigns, from using Parcel C for any purpose other than a private driveway in connection with the lot in Cedar Ridge which they presently own, or from disposing of it to any other person except the owner or owners of said lot, or the owners of Parcel A or B in Careybrook Subdivision. In short, we think the benefit and burden of the easement should remain with the appellants, but not the right to convey Parcel C as a separate building lot, in violation of the restriction.

*Decree reversed and case remanded for the passage of a decree in conformity with this opinion, each side to pay its own costs on this appeal.*